# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PAUL TORGERSEN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 19-cv-4975 |
| | ) Magistrate Judge Cox |
| SIEMENS BUILDING TECHNOLOGY, INC.; SIEMENS INDUSTRY, INC.; SIEMENS CORPORATION; and SIEMENS ENERGY & AUTOMATION, INC., | ) |
| Defendants. | ) |
| SIEMENS INDUSTRY, INC., | ) |
| Third-Party Plaintiff, | ) |
| v. | ) |
| LLD ELECTRIC CO., | ) |
| Third-Party Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On April 1, 2021, Siemens Industry, Inc.[1] and Third-Party Defendant LLD Electric Company ("LLD") filed what was essentially a motion to compel and for sanctions, styled Defendants' Motion for Evidentiary Hearing Regarding Discovery Violations and Spoliation of Evidence. [Dkt. 77.] On April 13, 2021, the Court held a motion hearing on Defendants' motion, where the motion was granted in part and taken under advisement in part. [Dkt. 81.] The Court also set a briefing schedule related to the facts and circumstances surrounding the deletion of Plaintiff's Facebook page because Defendants had articulated a credible allegation with respect to the spoliation of that evidence. *Id.* Briefing is now complete on that issue, and the remainder of Defendants' motion is ripe for disposition.

---

[1] Siemens Industry Inc. has represented it is the successor by merger to Siemens Building Technology, Inc.; Siemens Energy & Automation, Inc.; and Siemens Corporation. [Dkt. 77, p. 1.]

This case involves an alleged construction site fall accident that occurred June 14, 2017, at Adlai E. Stevenson High School in Illinois. [Dkt. 1-1 at ¶ 1.] Plaintiff is seeking damages for personal injury and past and future lost earnings and wages. [Dkt. 1-1 at ¶ 10.] Plaintiff alleges an electrocution and fall, resulting in a left shoulder injury. [Dkt. 77 at ¶ 1.] At issue in the instant motion is Plaintiff's Facebook account, which Defendants contend "demonstrated recreational activities, golf trips, and other physical activities [which] would tend to show that the Plaintiff had not lost a normal life, and contrary to his claims was capable of using his shoulder and potentially returning to work." [Dkt 87, p. 4.]

At some point, Plaintiff Paul Torgersen had a publicly viewable Facebook page. [Dkt. 77, ¶¶ 13, 15.] Upon discovering the page, on July 13, 2020, Third-Party Defendant LLD served written discovery on Plaintiff asking about social media accounts including, specifically, the Facebook account. [Dkt. 77, ¶ 14.; Dkt. 87-7.] On or about August 31, 2020, Plaintiff deleted his Facebook account. [Dkt. 83, ¶ 1.] At some point between July 13, 2020 (the day Defendants' interrogatories were served) and August 31, 2020 (the day of deletion), Plaintiff's counsel communicated with Plaintiff not to delete his Facebook page. [Dkt. 83, ¶ 1.] Plaintiff claims he did not remember this directive at the time he deleted his account. *Id.* Facebook's policies state that a deleted Facebook page is permanently deleted after only 30 days. [Dkt. 87-4.] Facebook also takes the position that the Stored Communications Act, 18 U.S.C. 2701 exempts Facebook from a civil subpoena. [Dkt. 87-5.] Therefore, it appears the information contained on Plaintiff's Facebook page cannot be recovered for purposes of this litigation.[2]

Three months after service of LLD's discovery, Plaintiff finally answered the discovery, objecting that a disclosure of the once publicly viewable Facebook page "[u]nnecessarily invades Plaintiff's privacy."

---

[2] Plaintiff has since opened a new Facebook page [dkt. 83, ¶ 14], but this new page would not have the relevant historical information sought by Defendants. The Court considers Plaintiff's new Facebook page irrelevant for purposes of the instant motion. Unless otherwise noted, whenever the Court refers to Plaintiff's Facebook page, it is to the Facebook page Plaintiff deleted on or about August 31, 2020 (Plaintiffs have identified the subject Facebook page as https://www.facebook.com/paul.torgersen.9 [Dkt. 77, ¶ 13]).

[Dkt. 77, ¶ 15.] As an initial matter, the Court overrules this objection.[3] While a person generally has a reasonable expectation of privacy in the contents of their own computer, there is no such expectation "when a computer user disseminates information to the public through a website," such as Plaintiff did on his Facebook page. *Palmieri v. United States*, 72 F. Supp. 3d 191, 210 (D.D.C. 2014). Plaintiff has knowingly exposed this information to the public by posting it to Facebook.

Defendants have also moved for sanctions under Federal Rule of Civil Procedure 37(e). [Dkt. 77.] Federal Rule of Civil Procedure 37(e) provides the following:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> **(A)** presume that the lost information was unfavorable to the party;
> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
> **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). When determining whether to impose sanctions for spoliation of evidence, "Rule 37(e) provides the sole source to address the loss of relevant ESI that was required to be preserved but was not because reasonable steps were not taken, resulting in prejudice to the opposing party." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 2021 WL 185082, at *75 (N.D. Ill. Jan. 19, 2021) (citing *Snider v. Danfoss, LLC*, 2017 WL 2973464, at *3-4 (N.D. Ill. July 12, 2017)). Federal Rule of Civil Procedure 37(e) contemplates the following: that the lost information (1) must be electronically stored information ("ESI"), (2) existing during anticipated or actual litigation, (3) which "should have been preserved" because it is relevant; (4) was "lost because [] a party failed to take [] reasonable steps to preserve it" and

---

[3] Plaintiff also objects that the request is overly broad. The Court finds LLD's request to be narrowly tailored in that it only sought information since the date of the occurrence. [Dkt. 77-1, p. 21.] This objection is also overruled. Likewise, the Court also overrules the fact that "Plaintiff objects to giving restricted access to his social media accounts," as this is not a legally cognizable objection (and it is nonsensical). *Id.*

3

(5) cannot be restored or replaced through additional discovery. Moreover, "[i]f any of these five prerequisites are not met, the court's analysis stops, and sanctions cannot be imposed under Rule 37(e)." *Snider*, 2017 WL 2973464 at 4. A "decision tree" of this Rule 37(e) analysis can be visualized as follows:



*DR Distributors*, 2021 WL 185082, at *75 (citing Hon. Iain D. Johnston & Thomas Y. Allman, *What Are the Consequences for Failing to Preserve ESI: My Friend Wants to Know*, Circuit Rider 57-58 (2019)).

In the instant matter, **(1)** the Court finds Plaintiff's Facebook page constitutes ESI. Next, **(2)** the Court finds Plaintiff had a specific duty to preserve this information (*i.e.*, the Facebook page) from the moment it was sought by LLD on July 13, 2020. [Dkt. 87-7.] He obviously knew this information was sought when he discussed the discovery requests with his counsel, and has admitted as much ("Plaintiff acknowledges receiving a communication from the Law Firm of GWC Injury Lawyers regarding not deleting social media account…"). [Dkt. 83, ¶ 2.] Even if he hadn't specifically been on notice, Plaintiff had a duty to preserve this information in anticipation of litigation even before it was sought by Defendants. This court has stated that the anticipation of litigation means "a substantial and significant threat of litigation," not just the expectation that a suit is likely to be filed. *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.,* 145 F.R.D. 84, 87 (N.D.Ill.1992). This suit was filed on June 12, 2019 [dkt 1-1], and the Court can reasonably infer that Plaintiff anticipated doing so at least some months prior to that point. Therefore, Plaintiff's Facebook page should have been preserved as early as 2019.

Next, **(3)** Plaintiff made no relevancy objection to the request for his Facebook page. Nor would have such an objection been sustained. The relevance standard is extremely broad; Federal Rule of Civil Procedure 26 allows for discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and Federal Rule of Evidence 401(a) states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." "The scope of relevance for discovery purposes is far broader than for evidentiary purposes." *Bailey v. Meister Brau, Inc.*, 55 F.R.D. 211, 214 (N.D. Ill. 1972). It seems undeniable to the Court that evidence known to Plaintiff at the time he filed his complaint (*i.e.*, his Facebook page) that supports or refutes his factual allegations would have a tendency to make those facts more or less probable. The Court agrees with Defendant's articulation of the Facebook page's relevance:

> The Facebook page, which demonstrated recreational activities, golf trips, and other

physical activities would tend to show that the Plaintiff had not lost a normal life, and contrary to his claims was capable of using his shoulder and potentially returning to work. The Facebook page would have made the claims of damage less probable than without the evidence.

[Dkt. 87, p. 4.] Thus, the Court finds Plaintiff's Facebook page to be relevant.

Under the next step, the Court asks whether the Facebook page was lost because Plaintiff failed to take reasonable steps to preserve it. Plaintiff has admitted to the spoliation of his Facebook page: "Plaintiff acknowledges deleting his Facebook account," and he did not consult with his counsel concerning his intent to delete the page. [Dkt. 83, ¶¶ 1, 5.] Therefore, **(4)** Plaintiff not only failed to preserve this information, but he affirmatively caused its spoliation (tangentially close to the time it was requested by Defendants).

According to Facebook's own policies, there seems to be no way to recover this information for purposes of the instant civil suit. *See*, p. 2, s*upra*. Plaintiff has offered access to his new Facebook page in lieu of the old one, but the Court has already addressed the fact that this new page would have none of the relevant information sought by Defendants. *See* fn. 2, *supra*. Plaintiff has also provided Defendants with a download of all the photographs within his cell phone/Android ("a scattershot of six hundred some photographs," according to Defendants [dkt. 87, p. 7]) because when he made a Facebook post, "it would have been a photo/image in his cell phone/Android." [Dkt. 83, ¶ 11.] However, this PDF dump is not the panacea Plaintiff hopes. These undated photographs depict vacations, golf trips, motorcycle riding, and physical activities. [Dkt 87, p. 7.] Yet, the information and comments surrounding these nondigital "posts" cannot be retrieved; Plaintiff has not provided any metadata associated with these images because they were provided as PDFs rather than in their native format. [Dkt. 87, p. 8.] Moreover, apparently Plaintiff has produced what he claims is a sampling of photographs that were on his phone, with no indication which of these photographs were actually posted on Facebook or when.[4] *Id.* In their

---

[4] Plaintiff claims he produced all the photographs on his cell phone [dkt. 83, ¶ 11], but Defendants maintain Plaintiff produced a sampling of the photographs [dkt. 87, p. 8]. The Court has no way to reconcile this discrepancy at the current juncture, but it is not germane to the rulings made herein.

native Facebook format, not only would the photographs show a date and potentially a geolocation tag, but captions, comments, and tags of the individuals in the photos can (and often do) accompany the images.[5] The PDF images are devoid of this additional informational content. Therefore, the PDF production is not an acceptable substitute for Plaintiff's Facebook page.[6] Thus, the Court finds **(5)** the destroyed ESI cannot be restored or replaced through additional discovery.

Now the Court must turn its attention to the issue of intent to deprive. Defendants need only demonstrate intent by a preponderance of the evidence. *Williams v. Am. Coll. of Educ., Inc.*, 2019 WL 4412801, at 11 (N.D. Ill. Sept. 16, 2019) ("To prevail under Rule 37(e)(2) or the court's inherent authority, [movant] must show by a preponderance of the evidence that [destroying party] engaged in spoliation with the requisite intent."). "Intentional destruction and bad faith may be proved inferentially and with circumstantial evidence, and this Court need not leave experience and commonsense at the courthouse door when making its determination." *Sonrai Systems, LLC v. Anthony Romano, et al.*, 2021 WL 1418405, at 13 (N.D. Ill. Jan. 20, 2021) (citations and signals omitted).

Plaintiff's destruction of his Facebook was intentional and occurred while on notice to preserve the same. Plaintiff's explanation for what happened here is balderdash. Plaintiff allegedly "deleted his account solely for reasons related to ever increasing online threats and intimidating communications including threats of physical violence related to his political expressions that he posted on the subject Facebook account." [Dkt. 83, ¶ 3.] The Court has been provided no details of these alleged threats and has no way to verify the veracity of this statement. However, as the Court noted, during the April 13,

---

[5] Alarmingly to the Court, several of these PDF photographs allegedly show the subject VAV box involved in the occurrence, which had apparently never been produced prior to this PDF dump. [Dkt. 87, p. 8.] If these VAV photos were indeed posted to Plaintiff's Facebook page, not only would the contemporaneous data accompanying them be invaluable to Defendants, but these posts likely would have constituted a statement/admission by a party opponent (which has now been deleted). *United States v. McGee*, 189 F.3d 626, 632 (7th Cir. 1999) (holding that admissions by party-opponents under Federal Rule of Evidence 801 need not be inculpatory: "[a]dmissions by a party-opponent are usually contrary to a position that the declarant is taking at the trial in which it is introduced….The party's statement need not have been against interest when made….") (citation omitted).

[6] The Court does not believe producing these images in their native format would be an acceptable substitute either, as they would still be devoid of the additional information that accompanies them when they get posted to Facebook (*e.g.*, date, geolocation tag, captions, comments, and tags of the individuals in the photos).

7

2021 hearing on this matter, "…if he wanted to delete political posts, he could have done that. You don't have to take your whole Facebook page down to do that. People delete stuff all the time. Instead, what he did was he took the whole thing down, and he was on notice that it had been requested of him." [Dkt. 87-1, 18:18-22.] Not only that, if Plaintiff felt physically threatened or intimidated on Facebook, Facebook gives specific instructions on how to handle such harassment: "If you see something that goes against the Facebook Community Standards, please let us know. You can also unfriend or block someone if they're bothering you." [Dkt. 87, p. 5; https://www.facebook.com/help/592679377575472.] Additionally, Facebook allows a user to implement certain privacy settings (*i.e.*, a variety of options for who can see what on a user's page), which Defendant alleges Plaintiff has taken advantage of on both his newest and prior Facebook pages. [Dkt. 87, p. 5.] At any point, Plaintiff could have simply blocked or restricted the politically topical content from the alleged harasser(s), leaving the remainder of the requested content accessible. Essentially, Plaintiff claims that in August 2020 he was the target of online harassment and threats to his safety, yet by March 2021, approximately seven months later, those threats had apparently abated to the point where he no longer felt in any danger, so he made a new Facebook page. The Court finds this claim incredible.

Further casting doubt on the veracity of Plaintiff's tale of online harassment are (1) the shifting explanations about whether and when Plaintiff's counsel notified Plaintiff his social media accounts were being sought and to preserve the same (including his Facebook page); (2) the tangential timing of Plaintiff's deletion of his Facebook page so soon after LLD's request for the same; and (3) Plaintiff's evasion in answering the discovery after his page had been deleted. The objective evidence reveals that on July 13, 2020, Third-Party Defendant LLD served written discovery on Plaintiff requesting information about his Facebook page. [Dkt. 77, ¶ 14; Dkt. 87-7.] At some point between July 13, 2020 and August 31, 2020, Plaintiff's counsel communicated with Plaintiff not to delete his Facebook account.[7]

---

[7] Casting further doubt on the veracity of this entire tale is Plaintiff's counsel's representation in open Court that he never told Plaintiff that Defendants had requested his Facebook information. [Dkt. 87-1, p. 20:2-5; *see also* 21:16-22:2

8

[Dkt. 83, ¶ 1-2.] Nonetheless, at some point less than 49 days after Defendant requested it, Plaintiff deleted his Facebook account anyway. [Dkt. 83, ¶ 1.] Plaintiff claims not to remember this directive at the time he deleted his account. [Dkt. 83, ¶ 2.] Compounding this error, approximately 43 days after deleting his Facebook page, Plaintiff refused to disclose the page at all. [Dkt. 77-1, p. 21.]

At this point, under the Rule 37(e) decision tree, the Court need not address the issue of prejudice because it has determined Plaintiff's conduct to be an intentional act designed to deprive Defendants of relevant ESI. However, as Defendants have articulated, without the deleted Facebook page, they will be unable to "thoroughly investigate claims of nature and extent of [Plaintiff's] claimed injury, loss of normal life, and permanent disability." [Dkt. 87, p. 2.] The Court agrees and finds Defendants have indeed been prejudiced by the destruction of Plaintiff's Facebook page.

In light of these facts, the Court will not leave experience and commonsense at the courthouse door. *Sonrai Systems*, 2021 WL 1418405, at 13. The objective evidence in this case leads the Court to conclude Plaintiff's deletion of his Facebook page was in response to Defendant LLD's discovery request for the same so that Defendants would not be able to access any posts which could potentially cast doubt on the seriousness of his claimed physical injuries related to the instant lawsuit. The Court agrees with Defendants that when "[t]aken as a whole, the conduct of the Plaintiff far exceeds inadvertence or mistake and demonstrates disrespect for the Court and an intentional abuse of the discovery process." [Dkt. 87, p. 12.] This is more than a preponderance of evidence. *Williams*, 2019 WL 4412801, at 11. Moreover, the Court does not find Plaintiff's explanation of his conduct to be "substantially justified." Fed. R. Civ. P. 37(c) (courts need not impose sanctions if, in addition to the non-compliant party's position being "substantially justified," the violation was "harmless.") Thus, sanctions are appropriate.

"In determining the appropriate sanctions to impose, 'the district court should consider the egregiousness of the conduct in question in relation to all aspects of the judicial process.'" *Fuery v. City of*

---

(Court comments about how incredulous this is); 23:11-15 (same).] This representation conflicts with Plaintiff's later assertion he was told to preserve his Facebook page. [Dkt. 83, ¶ 2.]

*Chicago*, 2016 WL 5719442, at *2 (N.D. Ill. Sept. 29, 2016) (quoting *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003)). While Defendants urge dismissal as the appropriate sanction here, dismissal of this matter is not an appropriate remedy in the Court's mind. While a reasonable jurist could rightfully impose that sanction, "there are certainly less drastic sanctions available that will remedy the prejudice to [Defendants] and allow the case to be heard on the respective merits." *DR Distributors*, 2021 WL 185082, at *97. In this case, the sanctions the Court has fashioned are tailored toward Plaintiff's discovery violations because the Court finds the spoliated information, while relevant to damages, does not go to the question of negligence which is the main question the finder of fact will be asked to resolve. *Id.* ("Court must also explain, even briefly, why it chose not to impose certain sanctions in its discretion.") Much like *DR Distributors*, "[t]he Court's decision not to default [Plaintiff] and dismiss [his claims] was not made lightly. Instead, the decision was discretionary based on all the facts of the case." *Id.*

Rather than dismissal as a sanction for his conduct, the Court believes jury instructions are the appropriate remedy here in response to Plaintiff's intentional act. The Court will instruct the jury that it can consider the evidence of Plaintiff's behavior resulting in the loss of the Facebook ESI along with all the other evidence in making its decision. Fed. R. Civ. P. 37(e)(1). The jury will be instructed that Defendant LLD requested the spoliated Facebook page; that the spoliated Facebook page contained information and images relevant to the claims and damages in the case; that Plaintiff had a duty to preserve the spoliated Facebook page; that Plaintiff was told to preserve his Facebook page by his attorneys once it was sought by Defendant LLD; that Plaintiff affirmatively deleted his Facebook page shortly after it was requested by Defendant LLD in connection with this lawsuit; and that the information on the spoliated Facebook page cannot be recovered. *Id.* Plaintiff will also be precluded from asserting that he deleted his Facebook page for political reasons. Finally, the Court will issue an adverse inference instruction to the jury, whereunder the jury must presume the information contained on Plaintiff's

Facebook page (*i.e.*, the spoliated ESI) was unfavorable to Plaintiff's claims in the instant lawsuit.[8, 9] Fed. R. Civ. P. 37(e)(2)(B). These remedies are not only proper in response to Plaintiff's intentional ESI destruction, but they attempt to alleviate the harm Defendants incurred because of the destruction of Plaintiff's Facebook page.

In conclusion, the remainder of Defendants' Motion for Evidentiary Hearing Regarding Discovery Violations and Spoliation of Evidence [dkt. 77] is GRANTED to the extent specified herein. The parties failed to file an updated joint status report on 5/17/2021 as ordered. [Dkt. 75.] Therefore, the parties are to file an updated joint status report on 5/31/2021 detailing the discovery that remains to be completed before the 10/29/2021 fact discovery deadline. *Id.* The parties should also specify whether they are interested in a settlement conference, keeping in mind that the Court will not hold a settlement conference (or recruit a colleague to hold such a conference) if not all parties want to participate in the settlement process. The Court again reminds the parties that no further extensions of the fact discovery deadline will be granted. *Id.*

**ENTERED: 5/24/2021**

_____
Susan E. Cox,
United States Magistrate Judge

---

[8] The Court will craft the appropriate verbiage of these instructions closer to the pretrial conference in this matter, but the Court anticipates they will be substantially similar to what has been laid out in this paragraph.

[9] The Court is also mindful of Defendants' concern that Plaintiff not be able to craft answers to minimize or thwart any adverse inference instruction. [Dkt. 87, p. 13.] To that end, Defendants implore that "Plaintiff should not be allowed to explain away the photographs that depict him performing various activities contrary to his injury claims when he is responsible for deleting the information that would contradict any future explanations that he might provide in discovery or before a jury." *Id.* The Court agrees and will also take appropriate steps to ensure the jury does not hear from Plaintiff any benign explanations (rather than facts) that would minimize the extent of the activities depicted in any photographs. To this end, Defendants may consider asking Plaintiff questions about relevant photographs during his deposition so everyone involved will have a preview of what Plaintiff's trial testimony is likely to be, and Defendants can notify the Court of any potential issues ahead of time rather than conduct a trial by surprise.